IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

CINDY BRIDGES, )
)
          Plaintiff, )
)
    v. ) No. 11-3247-SSA-CV-S-MJW
)
MICHAEL J. ASTRUE, Commissioner, )
Social Security Administration, )
)
          Defendant. )

## ORDER

Plaintiff Cindy Bridges seeks judicial review,[1] of a final administrative decision denying her disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a final decision of the Commissioner of the Security Administration under Title II. The parties' briefs are fully submitted, and an oral argument was held on July 17, 2012. The complete facts and arguments are presented in the parties' briefs and will not be repeated here.

### Standard of Review

The Eighth Circuit has set forth the standard for the federal courts' judicial review of denial of benefits, as follows:

> Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because we would have decided the case differently.

Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006).

---

[1] With the consent of the parties, this case was assigned to the United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(c).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). See Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995). To meet the statutory definition, "the claimant must show (1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is the result of his impairment." McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir. 1983).

When reviewing the record to determine if there is substantial evidence to support the administrative decision, the court considers the educational background, work history and present age of the claimant; subjective complaints of pain or other impairments; claimant's description of physical activities and capabilities; the medical opinions given by treating and examining physicians; the corroboration by third parties of claimant's impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the claimant's impairments. McMillian, 697 F.2d at 221.

## Discussion

Plaintiff raises four issues, asserting 1) the Administrative Law Judge (ALJ) failed to conduct a proper credibility analysis, 2) the ALJ failed to properly determine Plaintiff's RFC, 3) the ALJ erroneously relied on the account of the vocational expert in determining whether Plaintiff was disabled, and 4) Plaintiff's disability was severe enough for there to be a medical impairment as listed in the appendix, 20 C.F.R. Part 404, Subpart P, Appendix 1.

*1. Plaintiff asserts that the ALJ failed to conduct a proper credibility analysis.*

Plaintiff argues the ALJ failed to conduct a "proper, explicit credibility analysis as required by SSR 96-7p and Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)." (Doc. 13 at 14-15.) Specifically, Plaintiff argues the ALJ's credibility analysis was erroneous with regard to his assessment of her daily activities and with regard to his assessment of the medical evidence.

Deference is given to the ALJ's conclusion with regard to credibility determinations. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Moore v. Astrue, 572 F.3d at 524 (citing Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001)). "In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical

2

evidence to support the claimant's complaints." Moore v. Astrue, 572 F.3d at 524 (citing Finch v. Astrue, 547 F.3d 933, 935 (8th Cir.2008); Polaski v. Heckler, 739 F.2d at 1322).[2]

Plaintiff specifically challenges the ALJ's credibility determination with regard to two issues: 1) daily activities; and 2) the objective medical evidence.

First, with regard to daily activities, Plaintiff argues the ALJ wrongly discounted her credibility by erroneously determining that her daily activities showed she was capable of work. (Doc. 13 at 16.) Plaintiff specifically argues the ALJ failed to take into consideration her testimony that she was only able to do activities in short spurts. (Doc. 13 at 16.)

A claimant's complaints may be discounted based on inconsistencies in the record as a whole. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (citing Polaski v. Heckler, 739 F.2d at 1322). An ALJ may disbelieve a claimant's subjective complaints because of inherent inconsistencies or other circumstances. Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007).

In Jones v. Astrue, the Eighth Circuit noted that the ALJ and the district court had correctly identified, "the inconsistency between [Jones'] complaints and the objective medical evidence." Jones v. Astrue, 619 F.3d 963, 975 (8th Cir. 2010). The Eighth Circuit in Jones went on to note various life activities which the plaintiff performed that were inconsistent with accounts of disabling pain. Id. Specifically, the ALJ noted that Jones' difficulty with working appeared to be voluntary rather than a result of exhaustion; while Jones complained of suffering anxiety with being around people, a friend brought her to the hospital and she met and married her husband during this time; while she complained of panic attacks, her physician did not place her under any restrictions; while she complained of various ailments, there was no medical support for her complaints. Id. at 975-76.

Additionally, the Eighth Circuit has noted that activities "such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009). The Eighth Circuit noted that when Young, a plaintiff in a Social Security case, stated she cooked, cleaned, did laundry, shopped, studied Russian, exercised, and functioned as the primary

---

[2] Although Polaski originally notes only five factors, Finch identifies two additional factors. "The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant." Finch v. Astrue, 547 F.3d at 935 (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir.2000)). Moore incorporates these two factors into the Polaski analysis to establish a total of seven factors.

3

caretaker for her home and two young children, "this evidence further confirms Young's ability to work on a daily basis in the national economy." Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). In Goff v. Barnhart, the Eighth Circuit affirmed the ALJ's credibility findings, noting that, "Goff persistently worked as a part-time kitchen aide. Goff was also able to vacuum, wash dishes, do laundry, cook, shop, drive, and walk. These inconsistencies between Goff's subjective complaints and her activities diminish her credibility." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005). In Riggins v. Apfel, the court found that Riggins' activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with the plaintiff's complaints of disabling pain. Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir.1999).

As the ALJ noted, despite her impairments, Plaintiff could perform a range of activities, including household chores, laundry, cooking, shopping, getting around town by herself, and attending to personal care (Tr. 15, 36, 159-60). Plaintiff also represented that she could spend most of the day reading and watching television, she could drive for an hour or two at a time without a break, she could use the computer for an hour at a time before her hand would start to go numb, and she could watch a two-hour movie, though she would need to reposition herself (Tr. 30, 31, 36, 40, 160). Plaintiff's ability to engage in many normal daily activities provides evidence which "further confirms" the ability to work on a daily basis in the national economy.

Second, with regard to objective medical evidence, Plaintiff argues the ALJ was in error when he discounted her credibility because she did not receive the kind of treatment one would expect from a totally disabled individual. (Doc. 13 at 16-17.)

"The absence of prescription medicine and the failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995) (citing Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993); Bowman v. Railroad Retirement Board, 952 F.2d 207, 210-11 (8th Cir. 1991)).

In Johnson v. Chater, the Eighth Circuit noted that Johnson had neither taken any prescribed pain medication nor complained to any treating or examining physician that he experienced such severe pain. Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997). Further, the ALJ noted the paucity of any medical treatment sought by Johnson, in light of his subjective complaints of such severe pain. Id. Prior to the examination conducted by Dr. Kipp for the

4

purpose of Johnson's application for disability benefits, Johnson neither consulted another physician for back discomfort, nor reported significant back trouble, which was inconsistent with Johnson's subjective complaints of disabling pain. Id.

In this case, Plaintiff saw her primary care physician only once during her entire alleged period of disability; not for treatment, but to ask him to complete disability paperwork after she quit her job to take "time off that she needed" (Tr. 288). Plaintiff had several epidural injections and nerve blocks during the first few months of her alleged period of disability, but no treatment of her back after June of 2008 (Tr. 297-314, 354). In fact, the only time Plaintiff sought medical treatment of any sort for nearly two full years, from June 2008 through the date of the ALJ's decision, was in July 2009, when she went to the emergency room with a bout of diverticulitis, which was treated with antibiotics (Tr. 347). During the alleged period of disability, the only medications Plaintiff took on a regular basis were over-the-counter ibuprofen or Excedrin for pain and Tylenol PM "to get some sleep" (Tr. 37, 190, 354, 327). As the ALJ noted, this is not the type of medical treatment one would expect for a totally disabled individual (Tr. 15). As noted above, "[t]he absence of prescription medicine and the failure to seek medical treatment for such a long time during a claimed disability tends to indicate tolerable pain." Bentley v. Shalala, 52 F.3d at 786.

Also with regard to the objective medical evidence, Plaintiff argues that the ALJ's inference about her limited treatment is flawed; she claims her treatment was limited because she had no insurance and was unable to afford treatment. (Doc. 13 at 16-17.)

In Goff v. Barnhart, Goff asserted she was not able to take prescription medications because she lacked financial means to obtain treatment. Goff v. Barnhart, 421 F.3d at 793. The Eighth Circuit noted that, "there is no evidence Goff was ever denied medical treatment due to financial reasons. Without such evidence, Goff's failure to take pain medication is relevant to the credibility determination." Id. (citing Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir.1994)).

There is no evidence in the record suggesting that Plaintiff complained to her physicians of an inability to afford treatment, or that she sought any treatment offered to indigents. Plaintiff testified at the hearing that she stopped taking prescription medication not because of any financial considerations, but because it bothered her stomach and "wasn't helping any" (Tr. 38). Plaintiff testified at the hearing that she did not plan on getting back surgery not only because of her "financial situation," but also because there was no guarantee it would work (Tr. 39). And

5

evidence of record suggests that Plaintiff did not consistently follow through with recommended treatment, even before January 2008, when she quit her job and lost her insurance (Tr. 39, 268, 287). Plaintiff's argument lacks merit. Although economic justifications for the lack of treatment can be relevant to a disability determination, Plaintiff offered no testimony or other evidence to show she had been denied treatment or access to prescription medicine on account of financial constraints.

Plaintiff argues that her credibility is bolstered by her good work history and because she sought multiple forms of treatment for her symptoms. (Doc. 13 at 17-18.) And indeed, the ALJ acknowledged Plaintiff's work history and efforts at treatment, and although the ALJ found that Plaintiff's work history lent some credibility to her allegations of disabling symptoms, other evidence, including inconsistent representations, eroded her credibility.

In conclusion, the ALJ's consideration of Plaintiff's credibility was consistent with the Commissioner's regulations at 20 C.F.R. § 404.1529 and the framework set forth in Polaski v. Heckler, 739 F.2d at 1322. Plaintiff is still able to perform many important life activities. Her ability to perform these activities is inconsistent with her allegations of disabling pain. Insofar as Plaintiff's assertions are contradicted by her ability to function on a daily basis, the ALJ did not err in his credibility determination. There is not enough evidence for this Court to overturn the ALJ's credibility determination. Travis v. Astrue, 477 F.3d at 1042 ("This court will not substitute its opinions for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence."). Because the ALJ relied on substantial evidence in the record in discounting Plaintiff's credibility, this Court affirms the ALJ's credibility determination.

*2. Plaintiff asserts that the ALJ failed to adequately determine the Plaintiff's RFC.*

Plaintiff argues the ALJ failed to adequately determine her Residual Functioning Capacity (RFC). (Doc.13 at 10.) Plaintiff asserts the ALJ failed to construct an adequate narrative, as per SSR 96-8p. Id. Plaintiff uses a metaphor, comparing the narrative to a bridge, and asserting that the narrative is deficient insofar as it fails to bridge the gap between the record and the conclusion. Id. Plaintiff alleges three specific deficiencies in the record. First, Plaintiff alleges the ALJ failed to consider the opinion of Dr. Bennoch which supports Plaintiff's assertion that she has trouble using her hands. Second, Plaintiff faults the ALJ for not adequately considering certain impairments (hip pain and diverticulitis). Third, Plaintiff alleges the ALJ erroneously assigned weight to the opinion of Carleen Ziehmer, a state agency disability

6

Case 6:11-cv-03247-MJW   Document 17   Filed 08/22/12   Page 6 of 13

consultant, who was not a doctor. Plaintiff alleges that because of these deficiencies in the narrative, the narrative offered by the ALJ is inadequate and, therefore, the ALJ failed to properly formulate the RFC.

"RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." Leckenby v. Astrue, 487 F.3d 626, 631 n.5 (8th Cir. 2007). "The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC." Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). "A claimant's complaints of pain or symptoms 'shall not alone be conclusive evidence of disability ... there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques.' 42 U.S.C. § 423(d)(5)(A)." Travis v. Astrue, 477 F.3d at1042. "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011).

> A. Plaintiff asserts the ALJ's formulation of the RFC should have been influenced by Dr. Bennoch's testimony.

First, Plaintiff asserts the RFC assessment is flawed because the ALJ failed to consider Dr. Bennoch's limitations with regard to repetitive hand movements. However, Dr. Bennoch opined that Plaintiff had no manipulative limitations: she could perform unlimited reaching, handling, fingering, and feeling (Tr. 343-44). Dr. Bennoch further noted her capacity to lift and pull was limited to 20 pounds "and not repetitive" (Tr. 343-44). In explaining this limitation, he stated he "would recommend ... that the patient not return to a job if it requires repetitive hand movement since it is likely that her carpal tunnel syndrome symptoms would return" (Tr. 343-44). These three statements, read together as a whole, are not inconsistent with the RFC, which states that Plaintiff was able to "frequently grossly handle and fine finger with the bilateral upper extremities." (Tr. 12.) Reading Dr. Bennoch's opinion in a manner that makes all of his three statements consistent with each other results in the conclusion that his opinion, taken as a whole, is consistent with the RFC as established by the ALJ.

Other evidence supports the RFC as established by the ALJ. Although Dr. Bennoch's opinion was found to be more consistent than Dr. Ash's opinion with regard to the medical evidence of record (Tr. 15-16), the ALJ was not required to rely exclusively on that opinion. "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence,

7

including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995)).

Indeed, to insist that Dr. Bennoch's conclusion was inconsistent with the RFC would make his opinion both internally and externally inconsistent and therefore noncontrolling.

While the Eighth Circuit generally defers to the opinion of a treating source, there are exceptions to this rule. "Physician opinions that are internally inconsistent, however, are entitled to less deference than they would receive in the absence of inconsistencies." Guilliams v. Barnhart, 393 F.3d 798, 803 (8th Cir. 2005). "[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion." Goff v. Barnhart, 421 F.3d at 790-91.

### Internal Inconsistencies

Dr. Bennoch opined that Plaintiff had no manipulative limitations; she could perform unlimited reaching, handling, fingering, and feeling (Tr. 343-44). This seems consistent with the RFC, which stated that Plaintiff was able to "frequently grossly handle and fine finger with the bilateral upper extremities." Dr. Bennoch noted that Plaintiff's capacity to lift and pull was limited to 20 pounds "and not repetitive" (Tr. 343-44). Dr. Bennoch concluded that he "would recommend ... that the patient not return to a job if it requires repetitive hand movement since it is likely that her carpal tunnel syndrome symptoms would return" (Tr. 343-44). If this last statement is read as inconsistent with the RFC, then it also is inconsistent with Dr. Bennoch's earlier statement which asserts that Plaintiff could perform unlimited reaching, handling, fingering, and feeling. Thus, Dr. Bennoch's testimony would be weakened by internal inconsistencies, and therefore, would be limited with regard to controlling weight. Rather, Dr. Bennoch's statements should be read as consistent both with each other and the RFC. His conclusion which recommended that the patient not return to a job requiring repetitive hand movement (Tr. 343-44) should be qualified by his earlier statements regarding unlimited reaching, handling, fingering, and feeling (Tr. 343-44) and regarding the limited capacity to lift and pull (Tr. 343-44). If Dr. Bennoch's opinion is not read as consistent with the RFC, it is internally inconsistent and, therefore, its controlling weight is reduced.

### External Inconsistencies

If Dr. Bennoch's opinion is read as being inconsistent with the RFC, it is inconsistent with other evidence in the record. After the surgery, Plaintiff reported she was "doing well" and

8

had "excellent resolution" of her symptoms (Tr. 279-80). Dr. Ash found that Plaintiff had a strong grip and pinch in both hands and no sensory defect (Tr. 358). Dr. Ash further opined that Plaintiff could reach, handle, finger, feel, push and pull frequently; he made no comments about repetitive motions (Tr. 362). Dr. Bennoch himself noted Plaintiff's carpal tunnel, post-release, was asymptomatic and that when she returned to work as a janitor after the surgery, she was able to perform her job for the most part (Tr. 325, 341).

In conclusion, Dr. Bennoch's opinion read as a whole supports the RFC. If read otherwise, his opinion is both internally inconsistent and inconsistent with regard to the external evidence in the record and, accordingly, is not entitled to controlling weight.

B.  Plaintiff's subjective complaint of hip pain and diverticulitis.

Plaintiff asserts the ALJ failed to adequately evaluate her diverticulitis and hip pain. She asserts the ALJ failed to identify these problems as severe at step 2 and also failed to adequately consider these problems in formulating the RFC.

In assessing claims, the ALJ uses a five-step evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). Step two of the evaluation states that a claimant is not disabled if his impairments are not "severe." 20 C.F.R. § 416.920(a)(4)(ii). The ALJ proceeds to formulate the RFC between steps three and four. 20 C.F.R. § 416.920(a)(4). The RFC will in turn be considered in steps four and five. 20 C.F.R. § 416.920(a)(4).

First, Plaintiff asserts the ALJ failed to consider whether these two impairments (hip pain and diverticulitis) were severe under the second step as per 20 C.F.R. § 404.1520(c).

However, an impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007).

Moreover, only medically-determinable impairments, that is, impairments established "by medical evidence consisting of signs, symptoms, and laboratory findings," not just a claimant's subjective statements of symptoms, may be regarded as severe. 20 C.F.R. § 404.1508. Evidence establishing impairments must come from an acceptable source, such as a licensed physician. 20 C.F.R. § 404.1513.

Regarding diverticulitis, Plaintiff had episodes of diverticulitis in January and November 2007, before her alleged onset of disability (Tr. 13-14, 237-38, 241-46, 267-68, 273-74). But during her alleged period of disability, Plaintiff was treated for diverticulitis only once, in July 2009, when she went to the emergency room with a flare-up and was released later that night (Tr. 347-49). Plaintiff did not mention any issues with diverticulitis when she asked Dr. Yantis to complete paperwork attesting that she was disabled (Tr. 288). There is no showing that Plaintiff's diverticulitis significantly limited her ability to perform basic work activities, and there is no basis for the ALJ to find that it was a severe impairment.

Regarding hip pain, there is no basis for finding that Plaintiff's hip pain was a severe impairment. There is no medical evidence of record to establish a diagnosis of medically-determinable hip impairment (Tr. 340). During the consultative examination, Dr. Bennoch noted Plaintiff had complained of hip pain, but he added that there were no medical records or objective evidence to confirm the diagnosis of trochanteric bursitis or Plaintiff's subjective complaints (Tr. 340).

Second, Plaintiff further asserts that even if these impairments were nonsevere, the ALJ failed to adequately consider these impairments when formulating the RFC, a determination which occurs after step three and before step four of the evaluation process.

In formulating an RFC, "[a] claimant's complaints of pain or symptoms 'shall not alone be conclusive evidence of disability ... there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques.' 42 U.S.C. § 423(d)(5)(A)." Travis v. Astrue, 477 F.3d at 1042 (citing Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)).

Plaintiff complained she has hip pain at times, "mainly when she has been working a 10-hour shift" as a janitor and when she is "vacuuming and bending over" (Tr. 265, 267). To the extent that janitorial activities caused or exacerbated Plaintiff's purported hip pain, they are addressed in the sedentary RFC that allows her to sit most of the day and change positions frequently, without exposure to vibrations or other hazards (Tr. 12). Although Plaintiff complained of diverticulitis, it is unclear what functional limitations she thinks should be included in the RFC to account for her occasional symptomatic episodes. As noted in the discussion above regarding step 2, there is a lack of medical evidence supporting Plaintiff's

claims that her hip pain and diverticulitis are severe.  Above all, the RFC addresses Plaintiff's complaints and, accordingly, there is no reason to reject the RFC as inadequate.

In conclusion, the evidence indicates Plaintiff's hip pain and diverticulitis are not severe. Insofar as Plaintiff suffers from hip pain and diverticulitis, the ALJ accounted for this by proscribing an RFC which limits Plaintiff to sedentary work.

C.  Plaintiff alleges that the ALJ erroneously relied on a non-physician agency employee

Plaintiff asserts the RFC assessment was flawed because the ALJ relied on a nonmedical opinion.  First, it is not clear the ALJ "relied" on a nonmedical opinion.  The record contains examination reports and opinions by two physicians, Dr. Ash, a state agency physician, and Dr. Bennoch, an independent physician (Tr. 15-16).  The ALJ discussed this medical information, and went on to credit Dr. Bennoch as "more consistent with other medical evidence of record" (Tr. 15-16).

The ALJ next referenced an RFC assessment by a nonphysician DDS advisor, noting the "conclusions reached are somewhat supported by the medical evidence of record at the time." (Tr. 16).  It is not clear the ALJ assumed this agency employee was a doctor, or gave any weight to his assessment.  To assign a physician's weight to his assessment would be error, insofar as he is not a physician.  However, the ALJ's comment does not indicate he viewed the DDS advisor as a physician.  Indeed, the ALJ's quote does not necessarily indicate anything other than that his assessment coincides with other medical evidence in the record.  The ALJ must formulate the RFC in view of all the evidence of the record (Guilliams v. Barnhart, 393 F.3d at 801), and it is not clear the ALJ went any further than to note the DDS advisor's opinion agreed with other evidence in the record.  The ALJ noted that "the conclusions reached [by the DDS advisor] are somewhat supported by the medical record at the time of their assessment and the claimant's credibility when accorded proper weight" and thus "incorporated the restrictions into the [RFC] capacity noted above, *to the extent consistent with other factors in the record*."  (Tr. 16) (emphasis added).  The language of the ALJ indicates the conclusion of the DDS advisor was viewed in light of the established medical evidence, and was notable insofar as it confirmed what had been established.  Above all, the conclusion of the DDS advisor was not considered autonomously, but insofar as it was consistent with the record, particularly with medical records. The DDS advisor's opinion is not contrasted with the other evidence, but rather is introduced as contingent on and limited by other evidence in the record, serving to affirm this evidence.

11

Hence, even if the ALJ erroneously assumed a state agency employee was a physician, his opinion is only considered insofar as it is consistent with other factors, and hence the ALJ would have reached the same conclusion absent such an erroneous assumption.

*3. Plaintiff alleges the ALJ improperly relied upon the Vocational Expert's testimony.*

Plaintiff alleges the ALJ improperly relied upon the testimony of the Vocational Expert (VE) in finding Bridges was capable of performing past work as a telephone operator clerk and receptionist. (Doc. 13 at 13.) Plaintiff alleges the RFC limits the jobs to "unskilled, simple work." Id. at 14. Plaintiff alleges the ALJ erred in relying on the VE's testimony that Plaintiff could perform her past work as a telephone order clerk and a receptionist, insofar as these positions were acknowledged by the VE to be semi-skilled, which is "considered intermediate." Id. at 13-14. However, the RFC did not limit Plaintiff to only "unskilled, simple work," but rather limited Plaintiff to "simple, unskilled work *and* work of a detailed or intermediate (not complex) nature" (Tr. 212) (emphasis added). The VE specifically noted that both the telephone-order clerk and receptionist positions were "semi-skilled" and "intermediate" (Tr. 212).

Additionally, the VE identified a number of sedentary, unskilled occupations that an individual with Plaintiff's vocational profile and RFC could perform, including bonder, with 115,000 positions nationally; circuit board assembler, with 98,000 positions nationally; and photofinisher, with 55,000 positions nationally (Tr. 213). Even if Plaintiff's reading of the RFC were correct, and Plaintiff was limited to only simple unskilled work, the expert's testimony that Plaintiff could perform unskilled jobs constitutes substantial evidence supporting the Commissioner's decision that Plaintiff is not disabled.

*4. Plaintiff alleges the medical evidence supports a finding of disability under the list of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).*

In step three of the determination process, the ALJ considers whether the claimant's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

Plaintiff alleged at oral argument that there is enough medical evidence in the record to support a finding of disability under the List of Impairments in Section A of 20 C.F.R. Part 404,

Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). Plaintiff specifically cites to pages 336-37 of the record as providing the pertinent medical evidence.

"The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990)).

However, Plaintiff fails to provide a close connection between the evidence and the medical listings in the appendix. Plaintiff did not provide this information in the brief, but presented this assertion during oral argument. Plaintiff fails to specifically link the evidence in the record to a disability in the Appendix. In this case, it is the appellant who fails to construct a bridge between the evidence and the conclusion.

## Conclusion

As set forth above, this Court finds that the ALJ's determination that plaintiff was not disabled as defined by the Social Security Act is supported by substantial evidence on the record as a whole.

IT IS, THEREFORE, ORDERED that the decision of the Commissioner is affirmed and this case is closed.

Dated this 22nd day of August, 2012, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge